# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

KEVIN DOBBS,

                         Plaintiff,

-vs-                                                    Case No.  2:11-cv-718-FtM-29DNF

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

Plaintiff, Kevin Dobbs seeks judicial review of the final decision of the Commissioner of the Social

Security Administration ("Commissioner") denying his claim for Disability and Disability Insurance

Benefits ("DIB"). Plaintiff filed his Memorandum of Law in support of the Complaint  (Doc. 20) on June

20, 2012. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr."

followed by the appropriate page number). The Commissioner filed the Memorandum of Law in support

of the Commissioner's decision (Doc. 21) on August 24, 2012. Plaintiff filed a Reply to the

Commissioner's Memorandum on September 11, 2012.[1] Thus, the case is now ripe for review.

The Court has reviewed the record, including a transcript of the proceedings before the

Administrative Law Judge ("ALJ"), the exhibits filed and administrative record, and the pleadings and

memoranda submitted by the parties in this case. For the reasons set forth herein, it is respectfully

---

[1]Plaintiff's Reply was incorrectly titled, "Plaintiff's Response to Defendant's Motion for
Summary Judgment with Supporting Memorandum of Law." (Doc. 24, p.1).

recommended that the decision of the Commissioner be **reversed and remanded** pursuant to 42 U.S.C. §405(g).

## I.    Social Security Act Eligibility, Procedural History, and Standard of Review

### A.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404,1511.

### B.    Procedural History

On April 3, 2009, Plaintiff filed an application for a period of disability and DIB alleging disability beginning March 30, 2009. (Tr. 10). Plaintiff's claim was initially denied on July 9, 2009. (Tr. 10). Upon reconsideration Plaintiff's claim was also denied on December 29, 2009. (Tr. 10). Thereafter, a Request for Hearing was timely filed. (Tr. 10). A hearing was held on February 11, 2011, before ALJ Ronald Robins. The ALJ's decision, dated April 12, 2011, denied Plaintiff's request for Disability and DIB benefits. (Tr. 10-17). The Appeals Council denied Plaintiff's Request for Review on October 27, 2011. (Tr. 1). On December 27, 2011, Plaintiff filed a Complaint (Doc. 1) with this Court seeking review and entry of judgment.

### C.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). The Court must, "review the Commissioner's decision to determine if it is supported by

substantial evidence and based on proper legal standards." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan,* 125 F.3d 1436, 1439 (11th Cir.1997)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion." *Id.* "Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (citing *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990)). The Court must, "view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986)). However, the Court, "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. The first step is considering work activity. If the claimant is doing any substantial gainful activity he is not disabled. 20 C.F.R. § 404.1520(a)(4)(I).

The second step considers the medical severity of the impairment: if there is not a severe medically determinable physical or mental impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

The third step also considers the medical severity of the impairment. If the claimant has an impairment that meets or equals one of the listings and meets the duration requirement, the claimant will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

The fourth step is assessing the residual functional capacity ("RFC") of the claimant, and the claimant's past relevant work. If the claimant can still do his past relevant work he will not be found

disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can make an adjustment to other work then the claimant will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(v).

Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287 (1987); *See also Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty*, 245 F.3d at 1278 n.2.

## II.    Review of Facts

### A.    Background Facts

Plaintiff was born on March 14, 1952, and was 57 years old on the alleged disability onset date. (Tr. 22). Plaintiff has a high school education. (Tr. 22). He formerly worked as an auto parts manager, retail sales person, and warehouse worker. (Tr. 36). Plaintiff alleges disability due to a combination of impairments. (Tr. 21). Plaintiff had bladder cancer which necessitated the removal of his bladder and prostrate. (Tr. 22). After having his bladder and prostrate removed, Plaintiff must now use an urostomy bag in order to void regularly. (Tr. 22). Plaintiff also alleges disability due to diverticulosis, chronic knee pain, chronic back pain, chronic hand pain, reflux disease, and a gastrological problem at least three times a week. (Tr. 21). Due to these conditions, Plaintiff alleges that he has been unable to work since March 30, 2009. (Tr. 20).

### B.    The ALJ's Findings

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2013, and has not engaged in substantial gainful activity since March 30, 2009. (Tr. 12).

At step two, the ALJ found that Plaintiff has the following severe impairments: history of transitional cell carcinoma currently in remission and diarrhea episodes-possible irritable bowel syndrome. (Tr. 12). The ALJ made these findings after careful consideration of the entire medical record. (Tr. 14).

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520 (d), 404.1526, 416.920(d), 416.925 and 416.925). (Tr. 13).

At step four, the ALJ found that Plaintiff has the RFC to perform the full range of light work as defined in 20 CFR 404.1567(b). (Tr. 14). In making this determination the ALJ stated he:

> [C]onsidered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(Tr. 14).

At step five, the ALJ found that Plaintiff, "is capable of performing past relevant work as a retail salesperson and auto parts manager. This work does not require the performance of work-related activities precluded by [Plaintiff's RFC] (20 CFR 404.1565)." (Tr. 16). The ALJ made this determination based upon the testimony of a vocational expert and by, "comparing [Plaintiff's RFC] with the physical and mental demands of [Plaintiff's past relevant work]." (Tr. 16). Based on these findings, the ALJ determined that Plaintiff was not disabled. (Tr. 16).

## C.    Plaintiff's Medical History

On May 13, 2002, Plaintiff had an MRI of his cervical spine. (Tr. 174). The MRI revealed, "spondylotic changes maximal at C4-5 and C5-6 with a disc protrusion more in the left posterolateral area at C4-5 as well as the right at C5-6 with neural foramina being narrowed at these stated levels."

(Tr. 174).

On March 5, 2009, Plaintiff went to the hospital complaining of hematuria. (Tr. 331). After a physical examination and urinalysis Plaintiff was instructed to follow-up with his primary care doctor immediately and was referred to Omar Benitez, M.D. (Tr. 331-332).

On March 12, 2009, Dr. Benitez performed a cystourethroscopy on Plaintiff. (Tr. 256). The procedure found a tumor on Plaintiff's bladder and a follow-up appointment was scheduled for March 20, 2009. (Tr. 256-257). At the follow-up appointment a post cystoscopy surgical procedure was scheduled. (Tr. 258-261).

On April 21, 2009, Dr. Omar Benitez performed a bilateral pelvic lymph node dissection and radical cystoprostatectomy with ileal conduit urinary diversion procedure (surgery) on Plaintiff to treat his bladder cancer. (Tr. 178). Plaintiff's bladder and prostrate were removed and Plaintiff opted to use an ileal conduit for urinary diversion. (Tr. 178). On May 1, 2009, Dr. Benitez removed Plaintiff's staples from surgery. Plaintiff appeared healthy and in no distress. (Tr. 223).

On May 13, 2009, John Long, M.D., performed a Physical RFC Assessment of Plaintiff at the request of the Social Security Administration ("SSA"). The primary diagnosis was transitional cell carcinoma. (Tr. 185). Dr. Long found Plaintiff could occasionally lift 50 lbs., frequently lift 25 lbs.; stand and/or walk 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour work day and had unlimited, push and/or pull abilities. (Tr. 186). Dr. Long stated that Plaintiff's symptoms were, "attributable to [a medically determinable impairment], significant functional recovery expected by E3." (Tr. 190). That same day Plaintiff also had a post-operative incision check for his surgery that took place on April 21, 2009. (Tr. 217). Leeann Boyd, an Advanced Registered Nurse Practitioner, performed the check and found that the incision was healing well. (Tr. 218).

On June 5, 2009, J. L. Bernard, J.D., Ph.D.,  performed a Consultative Examination Report at the request of the SSA. (Tr. 193). Dr. Bernard stated that Plaintiff's, "thought processes were rational, goal-oriented, and clear." (Tr. 194). Dr. Bernard diagnosed Plaintiff with dysthymic disorder secondary to surgery. (Tr. 194).

On July 1, 2009, Dr. Steven Wise completed a Psychiatric Review Technique form on Plaintiff at the Request of the SSA. (Tr. 195). Dr. Wise's diagnosis stated that Plaintiff had dysthymic disorder. (Tr. 195, 198). The report listed that Plaintiff's restrictions of daily living, difficulties in maintaining social functions, and difficulties in maintaining concentration, persistence, or pace were mildly restricted and Plaintiff had no episodes of decomposition. (Tr. 205).

On December 12, 2009, Donald Morford, M.D., completed a disability determination evaluation at the request of the SSA as follows:

> [Plaintiff is a] 57 year old man with a history of knee and back pain. He is S/P 04/21/2009 radical cystoprostatectomy with ileal conduit urinary diversion for a high-grade transitional cell urothelial carcinoma that invaded into but not through the muscularis propria. Lymph nodes were negative. The prostate showed one foci of high grade prostatic intraepithelial neoplasia. 09/15/2009 follow-up with Dr. Benitez shows no evidence of recurrence. Unfortunately, he has not responded to our communication; therefore, there is insufficient MER to prove current physical input.

(Tr. 264).

On December 14, 2009, Michael Zelenka, Ph.D., was unable to complete the Psychiatric Review Technique Form on Plaintiff. (Tr. 264). Plaintiff failed to respond to Dr. Zelenka's attempts at contacting him.  Dr. Zelenka wrote "[Plaintiff] failed to respond at Recon." (Tr. 277).

On May 11, 2010, Donna Fuller, M.D., examined Plaintiff regarding Plaintiff's pain problems with his hands and heels. (Tr. 286). Dr. Fuller's physical examination revealed that Plaintiff had early Dupuytren's contracture of both hands. (Tr. 286). Plaintiff's x-rays were essentially negative without

any significant osteoarthritis or evidence of heel spurs. (Tr. 286). Dr. Fuller's impression listed that Plaintiff had, "1. Bilateral hand Dupuytren's contracture without significant restriction of finger joint motion. 2. Probable ganglion cysts left hand pip joints, index, ring and little fingers. 3. Plantar fibromatosis involving the feet. 4. Plantar fasciitis bilaterally." (Tr. 286).

Dr. Fuller injected Plaintiff's heels with a small amount of Lidocaine and Dexamethasone. (Tr. 286). Dr. Fuller told Plaintiff that he, "would wait until [Plaintiff] begins to have some contracture of the knuckle joints and then proceed quickly with surgery." (Tr. 285-286). At this appointment, Dr. Fuller scheduled surgery on Plaintiff's left hand for May 17, 2010. (Tr. 285).

On May 17, 2010, Dr. Fuller performed a surgery on Plaintiff's left hand. (Tr. 285). On May 19, 2010, Plaintiff had a post-operative follow-up appointment with Dr. Fuller. (Tr. 285). Dr. Fuller noted that Plaintiff had good motion with his fingers and was healing well. (Tr. 285).

On June 1, 2010, Plaintiff had another follow-up appointment with Dr. Fuller. (Tr. 284). Dr. Fuller removed Plaintiff's sutures and noted that Plaintiff's, "wounds are healing well." Dr. Fuller further stated that Plaintiff had, "good range of motion of the fingers today." (Tr. 284).

On June 22, 2010, Plaintiff had another follow-up with Dr. Fuller. Plaintiff had near full range of motion with his left hand but was having more problems with the Dupuytren's contracture on the palmar aspect of his left hand. (Tr. 284).

On July 15, 2010, Plaintiff had a follow-up appointment with Dr. Fuller. (Tr. 284). Dr. Fuller checked Plaintiff's left hand and scheduled a partial palmar fasciectomy to remove the Dupuytren's contracture from Plaintiff's left hand. (Tr. 284).

On July 19, 2010, Dr. Fuller performed a partial palmar fasciectomy on Plaintiff's left hand to remove the Dupuytren's contracture. (Tr. 283). The following day Plaintiff returned to Dr. Fuller's

office complaining of numbness in his left long finger on his left hand. (Tr. 283). Dr. Fuller stated that Plaintiff was to, "work on finger range motion which was excellent today," and scheduled Plaintiff for a follow-up appointment. (Tr. 283).

On July 26, 2010, at a follow-up appointment with Dr. Fuller Plaintiff complained of continued numbness in his left hand's long finger which was not involved with the surgery. (Tr. 283). Plaintiff's hand and finger motion was doing well. (Tr. 283).

On August 4, 2010, Dr. Fuller removed the sutures from Plaintiff's surgery on Plaintiff's left hand. Dr. Fuller noted that Plaintiff's, "wound was healing well," but that, "[Plaintiff had] some hematoma formation," and Plaintiff was having some, "altered sensation in long finger on his left hand that was not involved [with the surgery]." (Tr. 283).

On August 26, 2010, Plaintiff had a follow-up appointment with Dr. Fuller. Plaintiff's wound on his hand was well healed. (Tr. 283). However, Plaintiff's long finger (which was not involved with the surgery) was now locking up. (Tr. 282). Dr. Fuller recommended that  Plaintiff start physical therapy three times a week. (Tr. 282).

On September 2, 2010, Plaintiff returned to Dr. Fuller.  Dr. Fuller writes, "He is having more problems with his left long trigger finger.  He would like to have this injected." (Tr. 282).  Dr. Fuller injected 1 cc 1% Lidocaine and 1 cc dexamethasone into the left long finger flexor tendon sheath taking care to avoid injection in the tendon proper. (Tr. 282).  Dr. Fuller further wrote that Plaintiff was, "progressing well with physical therapy on his own with regards to his hand Dupuytren's contracture surgery. Apparently [Plaintiff's] insurance did not cover outpatient physical therapy for him." (Tr. 282).

On October 5, 2010, Plaintiff had a follow-up appointment with Dr. Fuller. Plaintiff's left hand was doing well but Plaintiff was having problems with arthritis in his left knee. (Tr. 281). Plaintiff also had some Dupuytren's contracture in his right hand.

### III.   Specific Issues and Conclusions of Law

Plaintiff raises one issue on appeal. The issue as stated by Plaintiff is that, "[t]he ALJ's decision is not based upon substantial evidence because the ALJ failed to consider medical evidence related to Plaintiff's chronic hand problems. Moreover, the ALJ failed to incorporate any manipulative limitations in his assessment of Plaintiff's [RFC] capacity or explain such omission despite overwhelming evidence." (Doc. 20, p. 3).

Plaintiff argues that the ALJ unreasonably omitted any discussion about Plaintiff's chronic hand problems. (Doc. 20, p. 18). Plaintiff argues that the ALJ should have explained why the ALJ did not find Plaintiff's chronic hand problems to be severe because of the amount of medical evidence that would support such a finding. (Doc. 20, p. 18). Furthermore, Plaintiff states that the ALJ's omission of any discussion regarding Plaintiff's chronic hand problems is unreasonable because it was Plaintiff's primary complaint alleged at the hearing that prevented Plaintiff from working. (Doc. 20, p. 18).

Additionally, Plaintiff argues that the ALJ should have explained why the ALJ did not incorporate, "any manipulative limitations in [the ALJ's] assessment of Plaintiff's [RFC]." (Doc. 20, p. 18). Plaintiff states in his Reply that the ALJ's omissions in the ALJ's decision regarding Plaintiff's chronic hand problems leaves the Court without a meaningful basis for review. (Doc. 24, p. 2). Plaintiff's Reply also argues that the Commissioner's Memorandum is "post hoc rationalization" explaining why the ALJ failed to discuss Plaintiff's hand problems. (Doc. 24, p. 3).

The Commissioner makes several arguments in support of the ALJ's decision. The Commission argues that, "Plaintiff failed to show that his hand caused any severe impairments, and he failed to show that his impairments, whether severe or not severe, caused additional limitations on [Plaintiff's] ability to work." (Doc. 21, p. 5). The Commissioner also argues that the ALJ noted Plaintiff's hand complaints and that the ALJ's RFC determination was supported by substantial evidence. (Doc. 21, p. 5). The Commissioner states, "as discussed by the ALJ, in May 2009, John E. Long, M.D., a state agency consultant, reviewed the evidence and opined that Plaintiff could perform a full range of light work, with no manipulative limitations." (Doc. 21, p. 8). Lastly, the Commissioner argues that evidences supports the ALJ's finding that Plaintiff's credibility was low because, "in August 2010, Plaintiff presented to the emergency room because of a bee sting sustained while doing yard work." (Doc. 21, p. 8).

"[The Eleventh Circuit] has repeatedly held that an ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Furthermore, the ALJ's findings, "must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination . . . ." *Choquette v. Comm'r of Soc. Sec.*, 695 F. Supp. 2d 1311, 1326 (M.D. Fla. 2010). All alleged impairments required to be considered in combination are those that are severe and not severe. *See Heatly v. Comm'r of Soc. Sec.*, 382 Fed. Appx. 823, 825 (11th Cir. 2010). Lastly, in making a RFC finding, "the ALJ must consider all of the claimant's impairments, including those that may not be severe." *Choquette* 695 F.Supp. 2d at 1327.

The ALJ's decision makes specific and well-articulated findings regarding Plaintiff's severe impairments. However, the ALJ is required to consider all impairments both severe and not severe.

The ALJ's decision in this case omits any discussion regarding the condition of Plaintiff's hand or what limitations, if any, Plaintiff has because of Plaintiff's alleged chronic hand problems. The record reveals that Plaintiff received substantial medical treatment for his hand from May 11, 2010, to October 5, 2010. The ALJ noted this in his decision stating that Plaintiff has had, "six surgeries on his left hand, has trigger finger in left middle finger. [Plaintiff] cannot close his right hand completely," and that Plaintiff, "had surgeries on both hands in May and July of 2010." (Tr. 14). However, the ALJ does not mention Plaintiff's hands again in his decision.

Additionally, the Physical RFC Assessment relied upon by the Commission and the ALJ took place in May of 2009, while Plaintiff's medical treatment for his hands began in May of 2010. Without further analysis of the limitations, if any, Plaintiff has with his hand, the Court cannot determine if the ALJ considered all of Plaintiff's impairments. Therefore, the ALJ's decision is not supported by substantial evidence.  Although the ALJ properly considered Plaintiff's severe impairments in his decision the ALJ should have further discussed his findings regarding Plaintiff's hand given the amount of medical treatment Plaintiff received for them.

## IV.    Conclusion

The ALJ erred by not giving more specific and articulated findings regarding Plaintiff's alleged chronic hand problems given the substantial amount of treatment Plaintiff received for his hands. The lack of discussion renders the Court unable to determine if the ALJ considered all of Plaintiff's impairments when the ALJ made his findings. Therefore, the ALJ's decision is not supported by substantial evidence.

Accordingly, it is respectfully **RECOMMENDED** that:

The Clerk of the Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** this matter to the ALJ to consider all of Plaintiff's impairments.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida this 10th day of January, 2013.


_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies: All Parties of Record